UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARY F.

          Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____

**DECISION AND ORDER**

1:20-CV-01707 EAW

## **INTRODUCTION**

Represented by counsel, plaintiff Mary F. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Dkt. 9; Dkt. 11) and Plaintiff's reply (Dkt. 12). For the reasons discussed below, the Commissioner's motion (Dkt. 11) is granted and Plaintiff's motion (Dkt. 9) is denied.

## BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI on August 8, 2014. (Dkt. 6 at 567-68, 578).[1] In her applications, Plaintiff alleged disability beginning July 3, 2006. (*Id.* at 578; Dkt. 7 at 4). Plaintiff's applications were initially denied on March 3, 2017. (Dkt. 6 at 578, 605-20). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Renee S. Andrews-Turner on April 22, 2016. (*Id.* at 491-541). On March 14, 2017, the ALJ issued an unfavorable decision. (*Id.* at 575-96). Plaintiff requested Appeals Council review and on May 23, 2018, the Appeals Council issued an order vacating the ALJ's decision and remanding to the ALJ for further proceedings. (*Id.* at 599-602).

On remand, hearings were held before administrative law judge Mary Mattimore on November 29, 2018, and April 11, 2019. (*Id.* at 429-89). Plaintiff amended her alleged disability onset date to September 22, 2011. (*Id.* at 24). On August 26, 2019, ALJ Mattimore issued an unfavorable decision. (*Id.* at 21-57). Plaintiff requested Appeals Council review; the Appeals Council denied Plaintiff's request on September 24, 2020, making ALJ Mattimore's decision the Commissioner's final determination. (*Id.* at 9-11). This action followed.

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

### II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in

substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to

demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## **DISCUSSION**

**I.     The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2011. (Dkt. 6 at 26). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since September 22, 2011, the amended alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: tendinosis and impingement syndrome of the bilateral shoulders with left shoulder rotator cuff tear; depression; anxiety; asthma; attention deficit hyperactivity disorder; panic disorder without agoraphobia; left peroneal neuropathy; osteoarthritis; CREST syndrome; degenerative disc disease lumbar spine; migraine headaches; ankylosing spondylosis; myofascial pain syndrome; lumbago; cervicalgia; mild right sacroiliitis; fibromyalgia; and Raynaud's syndrome. (*Id.* at 27). The ALJ also found that Plaintiff suffered from the non-severe impairments of a history of a cerebrovascular accident, thyroid disease, and a history of seizures. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). In particular, the ALJ considered the requirements of Listings 1.02, 1.04, 3.03, 11.14, 12.04, 12.06, 12.11, 12.15, 14.04, 14.06, and 14.09 in reaching her conclusion. (*Id.* at 27-30).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the additional limitations:

> [Plaintiff can] sit for 8 hours in a workday and for 6 hours at any one time. She can stand for 2-3 hours in a workday but only for 2 hours at any one time. She can walk for 2-3 hours in a workday but only 1-2 hours at any one time. [Plaintiff] can occasionally push/pull bilaterally. She can occasionally to frequently feel bilaterally. She can frequently finger and handle bilaterally. She can frequently reach overhead bilaterally, and she can frequently reach in all other directions bilaterally. [Plaintiff] can occasionally to frequently operate foot controls bilaterally. She can frequently climb stairs and ramps. She can occasionally to frequently balance. She can occasionally stoop, kneel, crouch, and crawl. [Plaintiff] can never climb ladders, ropes, or scaffolds. She can never work at unprotected heights or with temperature extremes. She can occasionally be exposed to moving mechanical parts, humidity, wetness, fumes, odors, dust, gases, and pulmonary irritants. She can occasionally operate a motor vehicle, and she can work in a moderate noise level as defined in Appendix D of the Selected Characteristics of Occupations. [Plaintiff] can perform a low stress job defined as simple routine work and make simple workplace decisions not at a production rate (assembly line) pace. She can tolerate occasional interaction with the public and supervisors, and minimal changes in workplace processes and settings.

(*Id.* at 30-31). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 45-46).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there

were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of electronics sub assembler, injection mold operator, and small products assembler. (*Id.* at 46-47). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 47).

II. **The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error**

Plaintiff asks the Court to reverse the Commissioner's decision or to remand for further administrative proceedings, arguing that: (1) the ALJ's determination that Plaintiff had no limitations in her interactions with coworkers was not supported by substantial evidence; (2) the ALJ erred in evaluating the opinions of Plaintiff's primary care physician, Dr. William Blymire; and (3) the Appeals Council erred in determining that there was no reasonable probability that evidence newly submitted by Plaintiff would have changed the ALJ's decision. (Dkt. 9-1 at 2). The Court is unpersuaded by these arguments, for the reasons that follow.

A. **Assessment of Social Limitations**

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id*.

In this case, the medical opinions of record were mixed regarding Plaintiff's social limitations. Non-examining reviewing physician Dr. C. Butensky opined that Plaintiff would have "mild to moderate limitations in her ability to . . . interact appropriately with coworkers and supervisors," that she was moderately limited in her ability to interact

appropriately with the general public, that she was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors, and that she was not significantly limited in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (Dkt. 6 at 550, 554).  Dr. Blymire, Plaintiff's primary care physician, opined that she had no evidence of limitations in her ability to interact appropriately with others.  (Dkt. 7 at 783).  Consultative examiner Dr. Susan Santarpia opined that Plaintiff was able to relate adequately with others.  (*Id.* at 256).  Consultative examiner Dr. Robert Hill similarly opined that Plaintiff was able to "relate generally adequately with others."  (*Id.* at 450).

In making her RFC determination, the ALJ considered all these opinions, as well as Plaintiff's testimony that she had no difficulties getting along with "family, friends, neighbors, . . . bosses, teachers, police, landlords, or other people in authority," and ultimately concluded that Plaintiff had "no more than mild limitations in interacting with others" and was not limited in her interactions with coworkers.  (Dkt. 6 at 29, 31).  That conclusion is amply supported by the evidence of record, including the opinions of Drs. Blymire, Santarpia, and Hill, and there is no basis for the Court to disturb it.  *See Martes v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 750, 760 (S.D.N.Y. 2018) ("It is within an ALJ's discretion to resolve 'genuine conflicts in the medical evidence.'" (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002))).

Nor was it unwarranted for the ALJ to distinguish between supervisors and coworkers when identifying specific limitations.  As noted above, while Dr. Butensky opined generally that Plaintiff would have mild to moderate limitations in interacting with

coworkers and supervisors, Dr. Butensky then expanded on that opinion to explain that Plaintiff would be moderately limited in accepting instructions and responding appropriately to criticism from supervisors, while she would have no significant limitations in getting along with her coworkers without distracting them or exhibiting behavioral extremes. It was therefore rational for the ALJ to conclude that Plaintiff's limitations in dealing with supervisors were more significant than her limitations in dealing with coworkers, such that she could have only occasional interactions with the former. The Court finds no error in the ALJ's consideration of Plaintiff's social limitations.

### B. Assessment of Dr. Blymire's Opinions

Because Plaintiff's claims were filed before March 27, 2017, the ALJ was required to apply the treating physician rule, pursuant to which the opinion of a treating source is given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "Put another way, the rule requires the ALJ to defer to the treating physician's opinion when making disability determinations if the opinion is supported by reliable medical techniques and is not contradicted by other reasonable evidence in the administrative record." *Colgan v. Kijakazi*, 22 F.4th 353, 360 (2d Cir. 2022).

Where the treating physician rule applies, if the ALJ declines to afford controlling weight to a treating physician's opinion, she then must consider various factors, which include the frequency, length, nature, and extent of treatment; the amount of medical

evidence supporting the opinion; the consistency of the opinion with the remaining medical evidence; and whether the physician is a specialist, to determine how much weight to give to the opinion. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *see also Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). "An ALJ's failure to explicitly apply the[se] . . . factors when assigning weight . . . is a procedural error." *Estrella*, 925 F.3d at 96 (quotation omitted). However, such error is harmless if "a searching review of the record" confirms "that the substance of the treating physician rule was not traversed." *Id.* (quotations omitted).

An ALJ must "give good reasons in [her] notice of determination or decision for the weight [she gives to the] treating source's medical opinion." 20 C.F.R. § 404.1527 (c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons"' for the weight given to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific. . . ." *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted).

In this case, Dr. Blymire issued several opinions related to Plaintiff, in which he opined, among other things, that Plaintiff could not sit, stand, or walk for prolonged periods of time. (*See, e.g.,* Dkt. 7 at 488-93, 782-83). The ALJ individually considered each of the opinions issued by Dr. Blymire and gave them some weight. (Dkt. 6 at 40). The ALJ noted that Dr. Blymire was a treating source and that he had examined Plaintiff on multiple occasions. (*Id.*). However, the ALJ found that Dr. Blymire's opinions were not well

supported by his own records and findings on examination and were further inconsistent with the opinions of reviewing medical expert Dr. S. Goldstein and consultative examiner Dr. Nakita Dave. (*Id.*).

The Court finds no reversible error in the ALJ's assessment of Dr. Blymire's opinions. First, it is clear that the ALJ considered the relevant factors in making her assessment. She explicitly considered Dr. Blymire's treating relationship with Plaintiff, including the frequency and nature of his examinations. The ALJ further explicitly considered how much medical evidence supported Dr. Blymire's opinion and whether it was consistent with the other medical evidence of record. The ALJ also expressly noted that Dr. Blymire was a primary care provider.

Second, the ALJ gave good reasons for affording Dr. Blymire's opinions less than controlling weight—namely, that they were not supported by corroborating evidence from his own examinations of Plaintiff and that they were inconsistent with the other medical opinions of record. *See Halloran*, 362 F.3d at 32 ("[T]he treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."); *Katherine Marie S. v. Comm'r of Soc. Sec.*, No. 6:18-CV-00233 (TWD), 2019 WL 1427456, at *10 (N.D.N.Y. Mar. 29, 2019) ("The Second Circuit has recently made it clear that the ALJ need not afford controlling weight to the opinions of a plaintiff's treating physicians when they are not supported by clinical findings and inconsistent with their own records and treatment notes." (citing *Smith v. Berryhill*, 740 F. App'x 721, 724 (2d Cir. 2018))).

Plaintiff argues that where a claimant suffers from fibromyalgia, an ALJ is prohibited from discounting a treating physician's opinion based on a lack of objective medical evidence, because "[f]ibromyalgia is a disease that eludes objective measurement[.]" (Dkt. 9-1 at 23). Plaintiff's argument misapprehends both the case law on which she relies and the ALJ's decision.

It is true that fibromyalgia may be a disabling impairment and that "there are no objective tests which can conclusively confirm the disease." *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003). Accordingly, "objective findings are not required in order to find that an applicant is disabled" by fibromyalgia. *Id.* (internal quotation marks omitted). However, that does not mean that a treating physician's opinion need not be tethered to any evidence of record where one of the diagnoses is fibromyalgia. *See Butler v. Comm'r of Soc. Sec.,* No. 1:16-CV-0500 (TWD), 2017 WL 2834482, at *6 (N.D.N.Y. June 29, 2017) ("Although an adjudicator may not rely on an absence of objective medical findings as the sole basis for assessing limitations related to fibromyalgia, there still must be some evidence other than Plaintiff's unsubstantiated subjective reports of disability in order to merit a finding that fibromyalgia imposes disabling limitations." (citing *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008))); *see also Anysha M. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0271 (CFH), 2020 WL 1955326, at *3 (N.D.N.Y. Apr. 23, 2020) ("When determining an RFC based on fibromyalgia, the ALJ is not entitled to rely solely on objective evidence—or lack thereof—related to fibromyalgia, but must consider all relevant evidence, including the longitudinal treatment record.").

In this case, the ALJ noted that Dr. Blymire's opinions were wholly inconsistent

with his examinations of Plaintiff not only because there were "no objective clinical signs and findings" associated with his records, but also because Plaintiff repeatedly showed no acute distress, had a normal gait with no need for an assistive device, and had normal range of motion in her bilateral lower extremities with no pain or tenderness. (*See* Dkt. 6 at 35-36, 40). The ALJ also carefully considered Plaintiff's statements regarding her pain, as well as "factors relevant to her symptoms, including activities of daily living, aggravating factors, effectiveness of treatment, [and] pain relief measures[.]" (*Id*. at 45). The ALJ considered in detail Plaintiff's longitudinal medical record, including her many physical examinations throughout the relevant time period, and gave reasoned explanations for her reliance on Dr. Dave's and Dr. Goldstein's opinions. (*Id*. at 31-37, 39, 43-44). In sum, the ALJ plainly did not, as Plaintiff suggests, simply disregard Dr. Blymire's opinions because her fibromyalgia-associated limitations were not confirmed by objective medical testing. "Rather than improperly focusing on positive objective findings to discount Plaintiff's allegations of fibromyalgia and related symptoms, the ALJ's decision indicates a careful consideration of Plaintiff's multiple severe impairments along with the various medical opinions and other evidence of record to determine Plaintiff's supported physical and mental limitations." *Anysha M.*, 2020 WL 1955326 at *5.

    **C.**    **Appeals Council's Consideration of New Evidence**

"[T]he Appeals Council, in reviewing a decision based on an application for benefits, will consider new evidence only if (1) the evidence is material, (2) the evidence relates to the period on or before the ALJ's hearing decision, and (3) the Appeals Council finds that the ALJ's decision is contrary to the weight of the evidence, including the new

evidence," and good cause for not providing the information earlier is shown. *Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010) (citing 20 C.F.R. § 416.1470); *Sharon M. v. Comm'r of Soc. Sec.*, No. 19-CV-835S, 2021 WL 2153876, at *3 (W.D.N.Y. May 27, 2021); *see also Graham v. Berryhill*, 397 F. Supp. 3d 541, 557 n.10 (S.D.N.Y. 2019) (when faced with an argument that the Appeals Council failed to appropriately consider the new evidence submitted to it, "the court is expected to determine if the new evidence results in the ALJ's decision not being supported by substantial evidence or otherwise runs afoul of [42 U.S.C.] section 405(g)"). Evidence is considered new and material if it is not cumulative of the other evidence already in the record and is "'both relevant to the claimant's condition during the time period for which benefits were denied and probative'" and demonstrates "'a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently.'" *Graham*, 397 F. Supp. 3d at 557 (quoting *Lisa v. Sec'y of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991)).

Here, Plaintiff submitted to the Appeals Council "records dating from May 18, 2016, through December 29, 2017, from the Buffalo VA Medical Center, including primary care notes and cognitive-behavioral therapy for pain management" and "[p]rimary care records from Elmwood Medical Center rang[ing] in dates from January 22, 2016, through September 3, 2019[.]" (Dkt. 9-1 at 27; *see* Dkt. 6 at 50-427). The Appeals Council reviewed this evidence and concluded that it did "not show a reasonable probability that it would change the outcome of the decision." (Dkt. 6 at 10).

The Court finds no reversible error in the Appeals Council's conclusion. The new records submitted by Plaintiff to the Appeals Council do not contain, for example, new

diagnoses or evidence of a significant deterioration in functional ability. *See, e.g., Vosburgh v. Comm'r of Soc. Sec.*, No. 17-CV-6587P, 2019 WL 2428501, at *5 (W.D.N.Y. June 11, 2019) (new treatment notes were material because they contained new diagnosis of fibromyalgia); *Kellner v. Comm'r of Soc. Sec.*, No. 17-CV-947S, 2019 WL 2559516, at *5 (W.D.N.Y. June 21, 2019) (new treatment notes and imaging studies were material because they showed that initial success of back surgery, which was integral to ALJ's decision, did not continue). Instead, as the Commissioner correctly points out, the new treatment records submitted by Plaintiff in this case essentially show continuity of care and are largely either (1) cumulative of information already in the record or (2) related to acute medical conditions such as colds, bronchitis, and skin lesions that do not provide meaningful information regarding Plaintiff's work-related functioning. On this record, there is no basis for the Court to disturb the Appeals Council's conclusion that there was no reasonable probability the newly submitted records would change the outcome of the decision.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 11) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 9) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:   July __, 2022
         Rochester, New York